UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **TINA H. JONES** | * | **CIVIL ACTION NO. 10-1046** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Tina Jones filed the instant application for Title II Disability Insurance Benefits on September 26, 2007. (Tr. 85-87).[1] She alleged disability as of April 19, 2007, because of cervical/lumbar disc disease and diverticulitis. (Tr. 95). The claim was denied at the initial stage of the administrative process. (Tr. 57-62). Thereafter, Jones requested and received an August 14, 2008, hearing before an Administrative Law Judge ("ALJ"). (Tr. 20-43). However, in a May

---

[1] Jones filed prior applications for Disability Insurance Benefits and Supplemental Security Income payments on May 26, 2006. (Tr. 44-54). An Administrative Law Judge denied the claim on April 18, 2007. *Id*. In September 2007, plaintiff sought judicial review of the Commissioner's unfavorable decision. *Jones v. Astrue*, Civil Action Number 07-1626 (W.D. La.). On March 17, 2008, however, plaintiff voluntarily dismissed the complaint, as groundless. *Id*.

20, 2009, written decision, the ALJ determined that Jones was not disabled under the Act, finding at Step Four of the sequential evaluation process that she was able to return to her past relevant work as a glass selector. (Tr. 8-19). Jones appealed the adverse decision to the Appeals Council, which granted her request for review, and notified her on March 9, 2010, that it intended to find her not disabled. (Pl. Exhs. [doc. # 16-2]). The Council afforded Jones and her representative 30 days to submit any comments or new and material evidence. *Id*. On April 27, 2010, the Appeals Council acted upon its stated intentions, and issued a written decision finding Jones not disabled at Step Four of the sequential evaluation process. (Tr. 1-6). The Appeals Council's decision became the final decision of the Commissioner. (Tr. 1).

On June 28, 2010, Jones sought review before this court. She essentially argues that, for various reasons, the Commissioner's residual functional capacity assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

> (3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

**I.     Steps One, Two, and Three**

The Commissioner determined at Step One of the sequential evaluation process that Jones had not engaged in substantial gainful activity during the relevant period. (Tr. 5). At Step Two, the Commissioner found that Jones suffers severe impairments of cervical and lumbar disc disease, hearing loss, depression, and anxiety. *Id.* The Commissioner concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 12-13).

## II. Residual Functional Capacity

The Commissioner next determined that Jones retains the residual functional capacity to perform light work, reduced by the ability to only occasionally: balance, climb (but not ladders, ropes and scaffolds), crouch, stoop, kneel, and crawl; with moderate limitations in her ability to: understand, remember, and carry out detailed job instructions; maintain attention and concentration for extended periods; interact with the public and co-workers; and to set goals independently of others. (Tr. 5).[2]

Plaintiff challenges the Commissioner's residual functional capacity assessment on the twin grounds that he improperly discounted work limitations imposed by plaintiff's treating physician, E. Alan Webb, M.D., and failed to recognize certain restrictions of functioning imposed by consultative physical therapist, Steve Allison.

With regard to the former argument, Dr. Webb noted on April 26, 2007 that he had been following plaintiff since December 28, 2001. (Tr. 220). He completed a "Return to Work" slip for Jones, but remarked that she could not lift more than five pounds, with no prolonged sitting,

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

5

standing, bending, etc. (Tr. 220-221).[3] For purposes of analysis, the court recognizes that

> "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990).
>
> Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id.; see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

*Greenspan*, 38 F.3d at 237.

Here, the Commissioner acknowledged Dr. Webb's treating relationship with plaintiff, considered his brief opinion, but determined that it was not supported by the medical evidence of record. (Tr. 4). The Commissioner explained that physical examinations showed no significant abnormal musculoskeletal or neurological abnormalities. *Id*. This rationale is substantially supported by the record.

For instance, on December 7, 2007, Jones underwent a consultative physical examination

---

[3] He also seemed to suggest that she was incapable of returning to work because he did not assign a date for her to return to work. *Id*. Under the regulations, however, a physician's statement that a claimant is disabled or unable to work is accorded no special significance. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

administered by William Allums, M.D., at the request of Disability Determination Services. (Tr. 187-191, 194-195). In his ensuing report, Allums noted that Jones' hypertension caused her occasional headaches, but no other complications. *Id*. She takes medication for bipolar disorder, which she has suffered from since 1986. *Id*. Diverticulitis was controlled by medication. *Id*. She exhibited normal gait and station, with excellent toe-heel tandem walking. *Id*. Her straight leg raise was excellent; her DTRs were equal, 1+ bilaterally in both upper and lower extremities. *Id*. She had a very normal physical examination. *Id*. She was supple and easily accomplished the straight leg raise test. *Id*. Her hypertension remained well-controlled. *Id*. There was no evidence of residual from Bell's palsy. *Id*. There also were no sensory or motor deficits, and no joint abnormalities. *Id*. She exhibited a full range of motion in her joints. *Id*. Her mental status was stable. *Id*.

Pursuant to plaintiff's prior application for benefits, Jones was seen on August 29, 2006, by Scott Bergeaux, M.D. (Tr. 173-176). Bergeaux noted in his report that Jones complained of cervical/lumbar disc disease and diverticulitis. *Id*. Upon examination, however, Jones was able to bend and squat without difficulty. *Id*. She exhibited a normal gait, with the ability to tandem walk, without problems. *Id*. She ambulated without an assistive device. *Id*. She had normal grip strength, with adequate fine motor movements, dexterity, and ability to grasp. *Id*. She also demonstrated a full range of motion in all of her joints. *Id*. Consequently, Bergeaux opined that Jones should be able to sit, walk and/or stand for a full work day. *Id*. She also could lift/carry objects of "at least 20 pounds." *Id*. She had no postural, manipulative, visual/communicative or environmental limitations. *Id*.

Although Dr. Bergeaux examined Jones prior to the relevant period at issue in this case, there is no indication that plaintiff's condition deteriorated in the interim period. In fact, in

December 2007, Dr. Allums remarked that Jones had a "very normal" examination. Allums also did not identify any materially significant physical abnormalities. Moreover, MRIs of the cervical and lumbar spines from August 18, 2008, showed no evidence of disc herniation or spinal stenosis. (Tr. 280). The cervical MRI showed some marginal osteophytes consistent with mild degenerative disc change. *Id*. Whereas, the lumbar MRI showed some degenerative change. *Id*.

    The Commissioner further determined that two functional capacity evaluations performed on March 4, 2007, and September 13, 2008, by physical therapist, Steve Allison, generally supported the Commissioner's residual functional capacity assessment. *See* Tr. 4, 222-248. Plaintiff takes issue with the Commissioner's characterization of Allison's report(s). She notes that Allison assigned a residual functional capacity for "restricted" light work.

    In his most recent report, Allison's testing revealed that Jones could frequently sit, stand, and/or walk, frequently lift ten pounds, and occasionally lift 20 pounds. (Tr. 235). Jones also could constantly manipulate objects, grasp and forward reach. *Id*. She could occasionally perform other postural limitations. *Id*. Plaintiff emphasizes, however, that Allison included a restriction recognizing Jones' need to alternate between sitting, and standing and walking for 30 minutes each hour. (Tr. 235).

    The ALJ's decision, which the Appeal Council adopted in pertinent part, rejected those portions of Allison's report(s) which were inconsistent with his residual functional capacity assessment, because they were not supported by the weight of the medical evidence. (Tr. 16-17). In so deciding, the ALJ specifically noted the essentially benign findings of the consultative medical doctor, Allums. Of course, physical therapists, like chiropractors, are not "acceptable medical sources" under the regulations. 20 C.F.R. § 404.1513(d) & 416.913(d). Moreover, only

"acceptable medical sources" can provide "medical opinions" to show the severity of a claimant's impairment and how it affects her functional ability. 20 C.F.R. § 1527(a)(2) & 416.927(a)(2). Although the ALJ is required to consider evidence from "other sources" when evaluating an "acceptable medical source's" opinion, "the fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because, . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" SSR 06-03p.[4]

In this case, the ALJ (and, in turn, the Appeals Council) implicitly gave greatest weight to the examination findings of Dr. Allums, which, when combined with the earlier, but still relevant opinion of Dr. Bergeaux, provide substantial evidence to support the ALJ's residual functional capacity assessment.

The court further observes that the Commissioner found that Jones' subjective complaints were not fully credible. (Tr. 5). The ALJ solely credited Jones' statements regarding the intensity, persistence, and limiting effects of her symptoms to the extent that they were consistent with the medical evidence and the residual functional capacity assessment. (Tr. 16). When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p.

---

[4] *See also, Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (recognizing that the regulations accord less weight to other sources such as chiropractors than to medical doctors).
In another recent decision, plaintiff sought reversal, in part, because of a functional capacity evaluation completed by physical therapist, Steve Allison, wherein he found that the claimant needed to take a 20 minute break from sitting each hour. *White v. Astrue*, 2009 WL 278898 (W.D. La. Feb. 5, 2009). In rejecting plaintiff's basis for reversal, Magistrate Judge Hornsby observed that "[t]he ALJ found the medical source reports persuasive, and the presence of the therapist's report is not enough to deprive the agency decision from being based on credible evidentiary choices." *Id*.

The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in his credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Moreover, the ALJ is entitled to find that the medical evidence is more persuasive than the claimant's own testimony. *Falco, supra*.

In this case, the ALJ supported his credibility determination, in part, on the grounds that plaintiff's self-described limitations exceeded the objective findings and physical examinations. (Tr. 18). The record further reflects that during one of the functional capacity evaluations undergone by plaintiff, the physical therapist remarked that Jones' symptoms and perceived level of disability generally were unreliable and disproportionate with her actual functional loss. (Tr. 222-230). This observation tends to undermine the physical therapist's finding that plaintiff needed to regularly change positions, which, presumably was based upon plaintiff's subjective complaints of pain and discomfort. Similarly, plaintiff's excessive perception of disability further supports the Commissioner's decision to discount the limitations recognized by her treating physician, E. Alan Webb, who appears to have assigned them based upon plaintiff's own recitation of her limitations of functioning. *See e.g.*, Tr. 112 (plaintiff reported that she could only lift five pounds, with the inability to walk, stand, or sit for long).

Accordingly, the undersigned finds that the Commissioner's credibility analysis satisfied the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints

were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion); *see also* discussion, *supra* (discussing inconsistencies in plaintiff's own testimony) Thus, even if the instant ALJ incorrectly summarized the findings of the 2006 functional capacity evaluation, any error was harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

The undersigned further finds that the Commissioner's residual functional capacity assessment is supported by substantial evidence.[5]

## Conclusion

The Commissioner in this case was tasked with determining whether plaintiff was disabled. In so doing, he considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence by no means was uniform and could have supported a different outcome. Such conflicts in the evidence, however, are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try

---

[5] Plaintiff does not challenge the Commissioner's resolution of the effects of her mental impairments. In fact, plaintiff did not list a mental impairment as a basis for disability, and maintained at the hearing that she did not have a mental impairment at all. (Tr. 31). To the extent that plaintiff does, in fact, suffer from a mental impairment, the ALJ's determination that it did not restrict her ability to perform past relevant work is supported by substantial evidence where, as here, the impairment has afflicted her since 1986, but she still was able to work. *See* Tr. 187-191.

Plaintiff does not allege any error with the Commissioner's Step Four finding, that is independent of her challenge to the sufficiency of the residual functional capacity assessment.

the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton, supra*.[6] That is not to say that the Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Jones was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[6] Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here. Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence. *See e.g., Foster, supra; Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 5th day of August 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE